UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAUREEN SANTINI,                    )
                                    )
                Plaintiff,          )
     v.                             )    Civil Action No. 06-1970 GK
                                    )
JEFFREY A. TAYLOR, et al.,          )
                                    )
                Defendants.         )
_____)

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

    Defendants, Jeffrey A. Taylor and Daniel J. Metcalf,[1] have

moved pursuant to Fed. R. Civ. P. 12(b)(1), (6) and (7) to

dismiss this action and alternatively for summary judgment in

their favor, pursuant to Fed. R. Civ. P. 56.  Plaintiff has

opposed the motion,[2] but as set forth in support of the

dispositive motion and below, Plaintiff has failed to establish

that there exists any basis to allow her claims to proceed in

light of the undisputed facts.

    Plaintiff initiated this action under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative

Procedure Act ("APA"), 5 U.S.C. § 701-706, seeking information

from the Defendants about her and a criminal prosecution of her

in the Superior Court which ended when she entered the diversion

_____

    [1]  Both defendants are sued only in their official
capacities.  See Complaint, ¶¶ 5-6.

    [2]  Counsel for Defendants has received one version of
Plaintiff's Opposition by mail and another through the Court's
electronic Transmission Facilities.  The pages reflected herein
are those taken from the electronic filing.

program and the case was dismissed.  Plaintiff seeks disclosure
of documents under the FOIA and also challenges the refusal by
the Office of the United States Attorney for the District of
Columbia ("USAO") to comply with a subpoena issued by the
Superior Court, which was quashed in an October 17, 2006 Order
entered in <u>Santini</u> v. <u>Herman</u>, Miscellaneous Action No. 06-179
RMC.  But, the actions of the Defendants were proper.

ARGUMENT

The FOIA

In this purported Freedom of Information Act ("FOIA") case,
Plaintiff names individual defendants.  Although Plaintiff admits
that "a cabinet agency . . . is the proper defendant in an
APA/FOIA suit rather than individuals," Plaintiff's Opp. at 16,
she claims that naming individual government officials in their
official capacities is sufficient.  <u>Id.</u> (citing <u>Atchinson</u> v.
<u>District of Columbia</u>, 73 F.3d 418, 424 (D.C. Cir. 1996)).  In
<u>Atchinson</u>, however, the Court concluded that "[a] section 1983
suit for damages against municipal officials in their official
capacities [was] equivalent to a suit against the municipality
itself."  <u>Id.</u>, 73 F.3d at 424.  There, of course, the
municipality was already named as a defendant.  Moreover,
<u>Atchinson</u> did not apply the definition of an "agency" that
Congress enacted into the text of the FOIA.  5
U.S.C. §§ 552(a)(4)(B); 552(f).  Nor did it take account of the

-2-

Supreme Court's observation that a "waiver of sovereign immunity must be unequivocally expressed in the statutory text and strictly construed, in terms of its scope, in favor of the sovereign." Tri-State Hospital Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (citing Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (internal quotations omitted)).

The Searches

Plaintiff concedes that the search conducted by the Criminal Division was adequate. See Plaintiff's Opp. at 2.

Plaintiff argues that the FBI has not adequately searched its files, because no mention is made of "shared computer files." Plaintiff's Opp. at 2 (citing Jefferson v. Bureau of Prisons, Civil Action No. 05-848 GK, 2006 WL 3208666 (D.D.C. Nov. 7, 2006)).

In Jefferson, this Court noted as follows:

> To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. Id. at 127. The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998).

Jefferson v. Bureau of Prisons, supra, 2006 WL 3208666 at *4.

-3-

The FBI has met this standard.  <u>See</u> Hardy Decl., ¶¶ 12-25; <u>id.</u>, ¶ 17 ("the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS [Central Records System] files on a particular subject matter or individual"); <u>id.</u>, ¶¶ 23-25 (describing how the searches were conducted, including at least two searches of the CRS, cross-references in the indices of the CRS for FBIHQ and the Boston and Milwaukee Field Offices and ELSUR Indices).  Thus, unlike in <u>Jefferson</u>,[3] there was no reason to believe that any computer drive not searched would have responsive materials.  As noted in the Hardy Declaration and Department of Justice regulations, a requestor must ordinarily direct a search of any field office directly to that field office, Hardy Decl., ¶ 25 (<u>citing</u> 28 C.F.R. §§ 16.3(a) and 16.41(a))[4].  Plaintiff's request was sent to FBI Headquarters. Hardy Decl., ¶ 5 and Exhibits A and B.  Yet, the FBI still searched in the two field offices most likely to have files on

---

[3]  In <u>Jefferson</u>, the Court concluded that "[g]iven the breadth of Plaintiff's request, the Court finds it reasonable to conclude that Plaintiff sought records [<u>i.e.</u> records related to an investigation of Plaintiff conducted by the Special Investigative Section of USP-Atlanta from September 26, 2002 to November 2, 2002] on shared computer drives in the Atlanta Field Office."  2006 WL 3208666 at *1, *6.

[4]  Section 16.4 provides in relevant part: "For records held by a field office of the Federal Bureau of Investigation (FBI) . . ., however, you must write directly to that FBI . . . field office address. . .").  <u>See</u> <u>also</u> 28 C.F.R. § 16.4(a) (same).

-4-

Plaintiff, given her information that she had once lived in Wisconsin and Massachusetts. Hardy Decl., ¶ 25.

In any event, according to Jefferson, the "I-drive" was a system used in 2002 by FBI field offices "to hold investigative documents so that supervisors can approve them before placing them in the FBI's official file." Jefferson, supra, 2006 WL 3208666 at *6. Yet, nothing in the searches conducted for Ms. Santini even hints that there was ever any FBI investigative file that related to her. See Hardy Decl., ¶¶ 24-25. Ms. Santini's FOIA request identified her prior addresses in Massachusetts in the 1970's and in Wisconsin in the 1960's. See Hardy Decl., Exhibit A. It simply defies logic to think that 1) the I-drives even existed when Plaintiff lived in the field offices over 40 years ago and 2) that, if an I-drive existed at the relevant time, any documents would sit in the I-drive awaiting inclusion in an investigative file on Plaintiff that would have likely started when she lived within the jurisdiction of the FBI's Boston or Wisconsin Field offices nearly half a century ago. Indeed, there's no reason to believe that the I-drive even existed so long ago. Hardy Decl., ¶ 18 (ELSUR indices not automated until 1991 "[s]ince that time FBIHQ and all FBI field offices have electronically generated . . . ELSUR records).

In short, the over ten pages explaining the FBI's files and searches is more than adequate to meet the burden to establish an

-5-

adequate search.  See Hardy Decl. at 5-11.  That a conclusory
statement is omitted when so much detail is provided, cannot
undercut the detailed factual support for this conclusion.  See
Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982) (affidavits
must be relatively detailed and "nonconclusory"); Oglesby v. U.S.
Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (insufficient for
agency declaration to state in conclusory fashion that the
"search was initiated of the Department record system most likely
to contain the information").  The specific facts detailed by the
FBI in the instant action lead to the conclusion that an adequate
search was performed, and the lack of the legal conclusion in the
declaration does not negate this result.

Plaintiff also complains that the Declaration of John F.
Boseker ("Boseker Decl.") does not adequately explain the
adequacy of the search for responsive records in the Office of
the United States Attorney for the District of Columbia.  See
Plaintiff's Opp. at 2-3.  In fact, however, Plaintiff makes no
effort in Plaintiff's Opp. to suggest that there were any
additional criminal cases brought against her besides the one
documented in the case file that was found.  Plaintiff, instead,
complains that she does not understand how the file was located
"using the computer case tracking systems, RCIS and the Master
Index."  Plaintiff's Opp. at 2-3.  The Declaration of John F.
Boseker describes how the searches were performed and how it was

that Mr. Boseker confirmed that all responsive records were
located in the single criminal case file, F-7642-00.  See Boseker
Decl., ¶¶ 1-5, 10-11, 18-19.  Accordingly, the Defendants have
adequately explained in non-conclusory fashion how the responsive
case file was identified and retrieved.  See id., ¶ 19 (noting
the date of the searches, the methods used, the capabilities of
the databases used as well as the success of the searches).

Plaintiff, however, noted a discrepancy in the number of
pages initially referenced in a February 25, 2005 letter to her
and the number of pages on the Vaughn Index.  Plaintiff's Opp. at
3-4.[5]  As noted in Mr. Boseker's February 27, 2007 Declaration,
the pages were, in fact, incorrectly counted when Ms. Santini was
first contacted.  See AR at 103 and fn.4.  Nevertheless, in an
effort to verify that the record is accurate, Mr. Boseker has
gone over the documents again.  He has identified a mistake in
the summary calculation in his earlier declaration, which is
explained in the accompanying supplemental declaration.  See
Supplemental Declaration of John F. Boseker, ¶¶ 2-7.  Defendants
regret any confusion occasioned by this mistake, but submit that
the record is now clear.  Should the Court believe that there

_____

[5]  Plaintiff also implies that EOUSA had not adequately
explained which were the seven pages of documents that Mr.
Boseker had realized were duplicates of other pages.  Plaintiff's
Opp. at 3-4 (complaining that there was no "index or dates of
creation" of the duplicate documents).  In fact, the Vaughn Index
does identify which documents were counted as duplicates before.
See AR 146-49.

remains any doubt of the number of pages, the Defendants submit
that a review of the records in camera would be in order and
hereby proffer the file for such review.  xxxx submissions were
detailed enough that the district court did not abuse its
discretion in deciding that it could inspect the disputed
documents in camera without ordering further Vaughn indexing

Spirko v. U.S. Postal Service  147 F.3d 992, *998, 331
U.S.App.D.C. 178, **184 (C.A.D.C.,1998)


Withholdings

Plaintiff also complains that the withholdings applied to
certain records located within the United States Attorney's
Office were not properly supported.  Plaintiff's Opp. at 5-11
(taking issue with documents 12, 13, 14, 19, 21 and 22, which
total 14 pages).  Defendants submit that the Boseker Declaration
and its accompanying Vaughn Index adequately support the
withholdings.  See AR at 105-112, 143-51.  Nevertheless, as noted
above, Defendants proffer the 14 pages of documents to the Court
for an in camera review.  See 5 U.S.C. § 552(a)(4)(B); Horwitz v.
Peace Corps, 428 F.3d 271, 282 (D.C. 2005).

Plaintiff's argument that the Grand Jury secrecy rule does
not apply after a period of time has passed, is unsupported and

contrary to the language of Criminal Rule 6(e), which includes no time limit.  See Fed. R. Crim. P. 6(e); SCR-Crim. 6(e).  See generally, Kimenez v. FBI, 938 F.Supp. 21, 28 (D.D.C. 1996) (Rule 6(e) protects from disclosure: (1) grand jury testimony transcripts and subpoenas; (2) notes written by an Assistant United States Attorney in preparation for the case against the plaintiff to the grand jury, including reference to evidence, mental impressions, strategy, and tactics to be employed in grand jury proceedings; (3) records of third parties provided to the Government in the course of grand jury proceedings; and (4) notes concerning witnesses who testified before the grand jury).

Plaintiff suggests that removal of the names of third-parties from the records would be adequate to protect their identities.  But the record is otherwise.  See AR at 103, 107-112, 143-51; see also Dep't of the Air Force v. Rose, 425 U.S. 352, 376-381 (1976); Carter v. Dep't of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987) ("release of certain portions of them [the documents], even with names redacted, could easily lead to the revelation of the documents in their entirety, including the identity of the attorneys involved").

Plaintiff's claim that she should receive the identities of the third parties because the prosecution would have been required to turn over their identities in discovery in the criminal case is also misplaced.  Rather, in non-capital criminal

-9-

cases, such as Plaintiff's case, it is well-settled that a defendant has no right to discover the identity of prospective Government witnesses. <u>See</u>, <u>e.g.</u>, <u>Weatherford</u> v. <u>Bursey</u>, 429 U.S. 545, 559 (1977); <u>United States</u> v. <u>Hicks</u>, 103 F.3d 837, 841 (9th Cir. 1996) ("A district court that orders the Government and the defendant to exchange witness lists and summaries of anticipated witness testimony in advance of trial has exceeded its authority. . ."); <u>United States</u> v. <u>Watts</u>, 95 F.3d 617, 619 (7th Cir. 1996).

In short, Plaintiff's complaints about the withholdings are without merit, and an appropriate method to ensure as much would be for the Court to assess the 14-pages about which Plaintiff complains <u>in</u> <u>camera</u>.

<u>The Touhy Determination</u>

Plaintiff does not challenge the accuracy of the Agency's assessment that the discovery period has lapsed or that the efforts to properly serve a subpoena within that time were ineffectual; rather she claims that it might be possible to cure those defects. <u>See</u> Plaintiff's Opp. at 11-12. The record upon which this Court's review is to be made, however, is that which was considered by the agency when the decision was rendered. Indeed, it is well settled that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." <u>Camp</u> v. <u>Pitts</u>, 411 U.S. 138, 142 (1972); <u>see</u> <u>also</u> <u>Community for</u>

Creative Non-Violence v. Lujan, 908 F.2d 992, 997-98 (D.C. Cir. 1990); Doraiswamy v. Secretary of Labor, 555 F.2d 832, 839-40 (D.C. Cir. 1976); Polcover v. Secretary of the Treasury, 477 F.2d 1223, 1231 (D.C. Cir. 1973); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 401, 419 (1970).  Plaintiff asks this Court not only to go beyond the record in existence when the agency's decision was made, but to assume that the facts will be as Plaintiff hopes they will be in the future.  Plaintiff's request that this Court base its review on a speculative record of how the future may change the present is, thus, misguided.

Similarly, Plaintiff's effort to sway the Court's judgment by pointing out that she desires the deposition testimony to "get to the bottom of this perplexing situation" -- i.e. to learn whether potentially exculpatory evidence was provided in the criminal case during discovery -- is misplaced.  Plaintiff's Opp. at 14.  Plaintiff simply does not explain what the requested testimony is anticipated to be or how it is relevant to the issues in her case.  Defendants therefore submit that the decision at issue was fully supported by the administrative record and should be affirmed.

CONCLUSION

WHEREFORE, the above civil action should be dismissed, or summary judgment entered in favor of the defendants.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

-12-

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Reply To Plaintiff's Opposition To Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment and supplemental declaration has been made by mailing copies thereof to:

MAUREEN SANTINI
5810 Ipswitch Rd.
Bethesda, MD  20814

on this 15th day of June, 2007.


_____
W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAUREEN SANTINI,                     )
                    Plaintiff,        )
                                      )
            v.                        )        Civ. No. 06-1970 (GK)
                                      )
UNITED STATES DEPARTMENT OF           )
    JUSTICE, et al..,                 )
                    Defendants.       )
_____)

## SUPPLEMENTAL DECLARATION OF JOHN F. BOSEKER

I, John F. Boseker, declare the following to be a true and correct statement of additional

facts supplementing my original declaration submitted to this Court in the above-captioned

matter, the contents of which are incorporated by reference as if fully set forth herein:

1)       The purpose of this supplemental declaration is to clarify the discrepancy noted by

Ms. Santini respecting the number of records involved in the matter of her FOIA request and in

this litigation. (*See*, Plaintiff's Opposition to Defendants Motion to Dismiss, etc. at pages 3-4).

2)       I have personally re-reviewed each of the records in Ms. Santini's file, as well as

those identified in the Index, as well my declaration submitted to this Court in connection with the

above-captioned action. I have identified errata requiring correction as follows:

3)       The February 25, 2005 letter to Ms. Santini (*See*, EOUSA Exhibit F) should have

stated that there were 21 pages released in part ("**RIP**") rather than 20 pages. There are presently

19 pages RIP at issue in this litigation following EOUSA's determination to release 2 pages in

their entirety ("**RIF**"), which had previously been RIP. (*See*, Documents 1 and 2 in the Index).

4)       Document 18 in the Index should have listed 1 page RIP rather than 2 pages RIP.

The second page was identified in the Index as a duplicate page, but not subtracted.

5)    The February 25, 2006 letter to Ms. Santini (*See,* EOUSA Exhibit F) correctly stated that 30 pages were withheld in full ("**WIF**"), but the existence of 7 pages of duplicates was discovered during the review and indexing of these records, thereby reducing this number to 23 pages. (The 7 pages of duplicates are so identified and listed in the Index.)  Paragraph 17 of my earlier declaration misstates the total number of pages WIF as 17, although the Index correctly lists and accounts for all 23 pages.

6)    The February 25, 2006 letter to Ms. Santini (*See,* EOUSA Exhibit F) correctly stated that 36 pages were RIF.   With the additional disclosure of 2 page reference above , the total is now 38 pages RIF.

7)    In sum, **38** pages were **RIF**, 19 pages **RIP**, 23 pages **WIF**, and 7 pages are **duplicates** of those WIF. The documents which those 7 pages duplicated are identified on the Index that accompanies my earlier declaration.  See Vaughn Index, Document No. 15 (3 duplicate pages); Document No. 16 (2 duplicate pages); Document No.17 (1 duplicate page) and Document No. 18 (1 duplicate page).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___June 6___ , 2007.


JOHN F. BOSEKER

Attorney Advisor, EOUSA